## Commonwealth v. Levin

*F. Porter Wagner, District Attorney,* for Commonwealth.

*Arthur M. Peters,* for defendant.

KREISHER, P. J., February 27, 1969.—The Fish Law of May 2, 1925, P. L. 448, was amended, revised and recodified by The Fish Law of December 15, 1959, P. L. 1779, 30 PS §200. Section 200 makes it illegal to empty any substance deleterious to fish into any waters within the Commonwealth. Section 256 provides a fish warden with power, inter alia, "(a) To enforce all the laws of the Commonwealth relating to fish" and "(g) to enter upon any land or water in the performance of his duty."

Section 275 provides:

"Any person who shall by threat, menace or force or in any manner attempt to deter or prevent any fish warden, or other person authorized to make arrests for violation of the fish laws, from enforcing or carrying into effect any provision of this act . . ."

Section 277 requires that complaints for violations of the code shall be brought before the nearest available justice of the peace within the municipality wherein the alleged violation occurred, or if none there available, then before the nearest available in any adjoining municipality within the county.

The fish warden, his deputy, and a representative from the department of health went to the premises of the Metal Wire Recovery Corporation located in Valley Township to investigate a complaint alleging pollution of Maus Creek by said company as it passes through their property. The company was found guilty of pollution on at least one previous occasion and is presently seeking a permit for the approval of its operation from the department of health. The company was under surveillance by State representatives for some time, so the company officers were familiar with the problem. On this occasion the State men presented their credentials at the reception desk after which they were invited into the office of the president who announced he would do the talking, taking the position the pending permit from the department of health was all that was necessary from the company and that the fish warden was subjecting his company to what amounted to harassment. He expressed his desire that the repeated investigation be discontinued and stopped forthwith, and after considerable heated discussion the investigators left the premises without completing their investigation. After reporting to his superiors the obstacles he encountered, the fish warden lodged a complaint before a justice of the peace in

an adjoining township charging the company president with violation of section 275 above quoted. The justice adjudged defendant guilty after hearing, hence, this appeal.

Counsel for defendant attacks the jurisdiction of the justice as not being the nearest available in accordance with the provision of the code above quoted. The alleged violation occurred around 11 a.m. on the 17th of the month, and the complaint was not lodged until the 22nd. Incidentally, an investigation was conducted by a representative of the health department during the afternoon of the 17th without incident; however, the fish warden did not return to the premises. The prosecuting officer explained his use of a justice of the peace in the adjoining township as follows:

"Q: Where did you go to file the complaint?

"A: At first I went to Mr. Roan Lower who would be the nearest Justice of the Peace. Mr. and Mrs. Lower both are J.P.'s in this township but they made themselves unavailable at which point I proceeded to the next nearest J.P. and I did so until I got the J.P. that said they were available.

"Q: How many Justices of the Peace did you go to?

"A: Six.

"Q: Were they home and refused to take the case?

"A: Yes, in some cases.

"Q: Would you tell us who they were?

"A: The first place I went to was to Mr. and Mrs. Roan Lower, both are J.P.'s and they stated to me they were unavailable—Mr. Lower for reasons of health and Mrs. Lower would not be available because of vacation. Mrs. Lower at the time was getting ready to go on vacation. I next went to Thelma Freas, a J.P. in an adjoining township, Liberty Township. I knocked on the door and asked if she was available and she told me she had a stroke or heart attack and she didn't

want the excitement of a hearing. I then went to Walter Elmes, I believe of Mahoning Township, and he was unavailable due to his employment which made him unavailable for setting up hearings. Then I went to Edwin Shires, a J.P. in the same township where the hearing was held and his words to me were he wasn't hearing any cases because he wasn't in good health. He was an elderly man and he was referring all his cases to Mrs. Magliane.

"Q: What J.P. did you go to then?

"A: Mrs. Magliane.

"Q: In what township is that?

"A: West Hemlock.

"Q: To your knowledge are there any other Justices of the Peace that you didn't contact that were closer to this scene of this incident?

"A: No, I even went to the state police office to determine who was the next nearest.

"Q: So it is your opinion that you did go to the nearest available magistrate?

"A: Yes."

The Vehicle Code of April 29, 1959, P. L. 58, also contains a provision requiring the lodging of a complaint before the nearest available justice of the peace, so that there are innumerable analogous cases on the subject. These cases uniformly define the word "available" as used in these statutes to mean "one able and willing to exercise the duties of his office; capable of being made use of; at one's disposal, and within one's reach." The cases also hold that this is a question of fact to be determined at the hearing. The cases also uniformly conclude that a justice of the peace may refuse to take a case for any number of reasons or for no reason at all, and under those circumstances it is proper to proceed to the next nearest available justice of the peace. The more recent cases also hold the question is one of venue and not jurisdiction; therefore,

there is no longer any need for the availability facts to be alleged in the complaint or to appear on the transcript of the proceedings: Commonwealth v. Black, 42 D. & C. 2d 312. In light of the officer's testimony above quoted, we conclude the defense motion is without merit and must be denied.

Proceeding to the merits of the case, defendant admits the meeting in his office was conducted on the plane as testified to by the officers, but he attempts to justify his actions on the theory that it was his belief that he was legally justified in the position he assumed.

The acts prohibited by section 275 above quoted are clear and precise, and no lengthy explanations of the terms used therein is required. The evil to be remedied by the prohibition is obvious. During the first 150 years of this nation's existence, industrial development enjoyed a green light to devastate on the theory that "jobs were more important than fish" and that our great abundance could never be destroyed. However, the population explosion has brought about a reassessment of the old values and a new policy is emerging in all branches of our government due to the obvious necessity of the situation. Industry is slowly being required to take adequate measures to preserve our natural resources, and as the fight continues, the pendulum is slowly swinging in the opposite direction. The delayed Senate confirmation of the present Secretary of the Interior requires no comment.

Even the politically constituted general assembly of Pennsylvania in 1965 turned a deaf ear to the industrial lobbies, and determined pure water is now absolutely essential to the health, safety and economic future of the Commonwealth: Act of August 23, 1965, P. L. 372, 35 PS §691.4.

Likewise, the judiciary has now recognized the seriousness of the problem, and there are innumerable

recent cases holding the clean streams laws are constitutional, enforceable, and legally sound. Therefore, without further comment, we enter the following:

ORDER OF COURT

And now, February 27, 1969, the appeal filed in the above captioned case is dismissed at appellant's cost. Exception noted.